In re Salvatore W. DiSALVO, aka, S.W. DiSalvo, Bill DiSalvo, Debtor and Debtor In Possession.

Salvatore W. DiSALVO, Appellant,

v.

Jody DiSALVO, Ira M. Friedman, Esq., and Friedman & Friedman, a partnership, Appellees.

BAP No. CC–96–1975–PTJ.

Bankruptcy No. LA 95–23292 TD.

Adversary No. LA 96–02702.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 22, 1997.

Decided June 11, 1998.

Steven Karlton Kop, Weiss & Company, Los Angeles, CA, for Salvatore W. DiSalvo.

C. Casey White, Law Offices of Martin A. Gold, Los Angeles, CA, for Jody DiSalvo.

Before: PERRIS,[1] JONES and TCHAIKOVSKY,[2] Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

Debtor[3] appeals the bankruptcy court's dismissal of his claims for abuse of process and tortious violation of California Code of Civil Procedure § 726(a).[4] We REVERSE the dismissal of the claim for abuse of process and AFFIRM the dismissal of the tortious violation claim.

### FACTS

Debtor and defendant DiSalvo ("defendant") were divorced in 1990. The dissolution judgment included an equalizing award of $100,000, to be evidenced by a note and trust deed. Debtor executed the note and trust deed, but never paid any of the award. Between January and May 1995, defendant, through her attorneys, defendants Ira Friedman and the law firm of Friedman & Friedman ("attorney defendants"), brought various actions in execution of the judgment. Defendant collected $83.00 through those efforts. On May 26, 1995, debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

Defendant brought a dischargeability action against debtor, seeking a determination that the $100,000 equalizing award is nondischargeable. Debtor successfully defended that action by arguing that defendant had violated section 726(a) by attempting to collect the debt without first foreclosing the security, and the bankruptcy court ordered that the debt be extinguished.

Debtor, as debtor in possession of his Chapter 11 estate, then commenced this action claiming that all defendants' prepetition collection efforts constituted an abuse of process and that defendant DiSalvo's actions constituted a tortious violation of section 726(a).

On defendants' motion, the bankruptcy court dismissed the complaint because it determined that the claims were barred by res judicata.

### ISSUES

1. Are debtor's claims barred by claim preclusion?

2. Is the claim against the attorney defendants barred by issue preclusion?

3. Is the claim for abuse of process barred by the statute of limitations?

4. Does debtor's complaint state a claim for abuse of process?

5. Does debtor's complaint state a claim for tortious violation of Cal.Code Civ. Proc. § 726(a)?

### STANDARD OF REVIEW

The Panel reviews *de novo* the bankruptcy court's dismissal of a complaint on the basis of res judicata or statute of limitations. *In re Russell*, 76 F.3d 242, 244 (9th Cir.1996); *Donoghue v. Orange County*, 848 F.2d 926, 929 (9th Cir.1987). It also reviews *de novo* dismissal for failure to state a claim. *In re Englander*, 92 B.R. 425, 427 (9th Cir. BAP 1988).

### DISCUSSION

1. *Are debtor's claims barred by claim preclusion?*

 ▆▆▆ The preclusive effect of a prior adjudication is governed by the doctrine of res judicata, which encompasses the two subsidiary doctrines of claim preclusion (commonly referred to as res judicata) and issue preclusion (commonly referred to as collateral estoppel). *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir.1988). Claim preclusion bars a party from relitigating a cause of action, thus lending finality to legal actions.

---

1. Hon. Elizabeth L. Perris, Bankruptcy Judge for the District of Oregon, sitting by designation.

2. Hon. Leslie J. Tchaikovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

3. References in this opinion to "debtor" include the debtor as an individual and as the plaintiff debtor in possession.

4. All references in this opinion to section 726(a) are to the California Code of Civil Procedure. All other statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise stated.

It applies if (1) there was a final judgment on the merits; (2) by a court of competent jurisdiction; (3) the second action involves the same parties or their privies; and (4) involves the same cause of action. *In re Kelley,* 199 B.R. 698, 702 (9th Cir. BAP 1996). The doctrine bars subsequent claims only if they were asserted or could have been asserted in the first action. *Id.* at 703.

Federal Rule of Bankruptcy Procedure 7013 provides that Federal Rule of Civil Procedure 13 applies in adversary proceedings.[5] Rule 13(a) provides, in part, that

"[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

Debtor does not dispute that the bankruptcy court entered a final judgment, that the claims in the second action are based on the same nucleus of facts as were at issue in the first action, or that the claims existed at the time debtor defended the dischargeability action. He argues only that his claims for abuse of process and tortious violation of section 726(a) could not have been raised in defendant's action to determine the dischargeability of the debt, because Rule 13(a) requires the *pleader* to plead any counterclaim he has against the opposing party, and that the debtor, who was the defendant in the dischargeability action, is not the same pleader as the debtor in possession, who is asserting these claims. Therefore, according to debtor, those claims are not barred in this action.

Defendants argue that the parties are identical. There is support for defendants' argument that the debtor and debtor in possession are the same party. The Supreme Court has said that a debtor and debtor in possession are the same entity. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (debtor and debtor in possession are same entity for purposes of assuming executory contract). Defendants bolster their argument by pointing out that debtor successfully extinguished defendant's claim in the dischargeability action, to the benefit of the estate, and sought and obtained affirmative relief in the form of attorney fees.

██ The general rule is that, when an action is brought by a party in a representative capacity, the defendant cannot assert a counterclaim against the plaintiff in the plaintiff's individual capacity, because that would not be a counterclaim against an opposing party. 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1404 at 19–20 (1990). Similarly, a party sued in one capacity cannot plead a counterclaim in another capacity. *Id.* at 21. In this case, debtor was sued in his individual capacity to determine the dischargeability of a debt. Therefore, he was not required to bring a counterclaim in his capacity as debtor in possession for damages for alleged torts.

██ A party appearing in an action in one capacity, individual or representative, is not bound by or entitled to the benefits of claim preclusion. *Clark v. Amoco Production Co.,* 794 F.2d 967, 973 (5th Cir.1986); 18 *Moore's Federal Practice* § 131.40[2][a] at 131–131 (3d ed. 1997). Thus, a party appearing in one action in an individual capacity is not bound in a subsequent action brought in the party's representative capacity. *Id.; In re Sovereign Partners,* 179 B.R. 656, 662 (D.Nev.1995), *aff'd* 110 F.3d 70 (9th Cir.1997) (table).

"The rule that a person appearing in litigation in one capacity is not, generally speaking, affected thereby in another legal capacity serves to safeguard the integrity of such representative functions. A person appearing on behalf of another is required to act with complete fidelity to the interests of the beneficiary, uninfluenced by consideration of his own interest or advantage. By the same token, in appearing as

---

**5.** Bankruptcy Rule 7013 includes special rules for counterclaims by and against a trustee or debtor in possession. The parties in this case do not argue that those special rules apply in this case.

a representative of another, a person should be free to take positions inconsistent with those he might assert in litigation on his own behalf or on behalf of others he represents in some other fiduciary capacity."

*Restatement (Second) Judgments* § 36, *comment a* (1982). Thus, the pertinent question for claim preclusion purposes is not whether the debtor and debtor in possession are different entities, but whether they represent different interests.[6]

■■■■■ In determining the capacity in which a party appeared in an earlier action, the court looks at the substance, not the form, of the interests represented. 18 *Moore's Federal Practice* § 131.40[2][a] at 131–131. Where there is no indication in the pleadings or otherwise that the action involved the party in a representative capacity, the party is treated as having appeared in an individual capacity. 18 Wright, Miller and Kane, *Federal Practice and Procedure* § 4454 at 459; *Restatement (Second) Judgments* § 36 *comment a.* The determination is not dependent on the pleadings alone; it is sufficient to show that the action was in fact tried and decided as one that involved the representative capacity of the party. 18 Wright, Miller and Kane, *Federal Practice and Procedure* § 4454 at 459; Vol. 1, *Freeman on Judgments* § 419 at 915 (5th ed. 1925).

With regard to the prior action, the complaint in this adversary proceeding alleges that defendants commenced an action to determine the dischargeability of the debt arising from the equalizing judgment, and that after trial the court entered a judgment, a copy of which is attached to the complaint. Debtor alleges that the bankruptcy court found that defendant DiSalvo violated section 726(a). The attached judgment shows that the court extinguished the debt and declared the debt to be dischargeable.

■■■■■ An action to determine the dischargeability of a debt is an action against the debtor individually, not against the estate or a representative of it. The court's determination that the debt was extinguished, rather than simply discharged, benefited both the debtor individually and the estate. There is no indication from this record that debtor was sued in any capacity other than his individual capacity. The fact that the earlier judgment had an incidental benefit to the estate does not change the capacity in which debtor was sued.[7] We conclude that debtor appeared in the earlier action in his individual capacity, not in his capacity as debtor in possession representing the interests of the estate. He is therefore not barred from asserting claims he has against defendants in his capacity as representative of the estate. The bankruptcy court erred in dismissing based on claim preclusion.

6. Some courts and commentators use slightly different reasoning to reach the same conclusion. Rather than focusing on a single party representing multiple interests, they refer to a party appearing in an individual capacity as being a different "party" from the party appearing in a representative capacity. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (person sued in capacity as member of school board not same legal personage as individual for purposes of standing to appeal); Vol. II, *Black on Judgments* § 536 at 812 (2d ed. 1902) (party sued as representative after having been sued as individual "is in contemplation of law a distinct person and a stranger to the prior proceedings and judgment"); F. James and G. Hazard, *Civil Procedure* § 11.6 at 594 (3d ed. 1985) (for legal purposes, transactions by persons individually and in representative capacity are generally treated as transactions of two different legal personages); Vol. 2, *Freeman on Judgments* § 561 at 1191 (5th

ed. 1925) (person suing in different capacities "should be considered as if he were two distinct persons"). In light of the purpose behind the different capacities rule, which is to prevent conflicts of interest, we conclude that, for purposes of Rule 13(a), the better inquiry is whether the party represents different interests, not whether the party is considered to be a different legal entity.

7. Defendants argue that debtor was awarded attorney fees in the earlier action, and that those fees benefited the estate. Defendants' argument fails for two reasons. First, there is nothing in the pleadings in this case regarding an award of attorney fees. Second, even if attorney fees were awarded that benefited the estate, such an award would been based on extinguishment of the debt which would have benefited both debtor and the estate. Thus, an award of fees does not transform debtor from an individual into a representative of the estate.

2. *Is the claim against the attorney defendants barred by issue preclusion?*

██ The attorney defendants argue that dismissal of the claim against them can be affirmed on the basis of issue preclusion. Issue preclusion applies when (1) the issue sought to be precluded is identical to that involved in the prior action; (2) the issue was actually litigated; (3) the issue was determined by a valid and final judgment; and (4) the determination was essential to the final judgment. *In re Giangrasso,* 145 B.R. 319, 322 (9th Cir. BAP 1992).

██ Issue preclusion does not bar debtor's claim against attorney defendants for abuse of process. As we discuss below, a claim for abuse of process requires proof of improper motive in wrongfully using process. Although the issue of wrongful use of process was litigated in the first action, the issue of improper motive was not. Therefore, issue preclusion does not apply.[8]

3. *Is the claim for abuse of process barred by the statute of limitations?*

In the alternative, debtor argues that the claim for abuse of process is not barred by the statute of limitations. Bankruptcy Code section 108(a) provides:

"If applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

"(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

"(2) two years after the order for relief."

██ This subsection extends any statute of limitations for commencing an action by a debtor for two years after the date of the order for relief, unless the limitations period would expire later. 2 *Collier on Bankruptcy* ¶ 108.02[1] (15th ed. rev.1996). The statute applies to debtors in possession, who have the rights and powers of a trustee. *In re Santa Fe Development Etc.,* 16 B.R.

165, 167 n. 1 (9th Cir. BAP 1981). Subsection 108(a) contains three requirements:

"First, the applicable nonbankruptcy law must 'fix a period within which the debtor may commence' the action. Second, the debtor must file for bankruptcy before expiration of that period. Finally, the [plaintiff] must commence the action before the expiration of the extension period."

*Seawinds Ltd. v. Nedlloyd Lines, B.V.,* 80 B.R. 181, 187 (N.D.Cal.1987), *aff'd* 846 F.2d 586, *cert. denied* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988).

██ Those requirements are met here. There is no dispute that California law sets a one-year period within which debtor could commence the action for abuse of process claim. Cal.Code Civ. Pro. § 340. The actions alleged to have been an abuse of process occurred between January and May 1995. Debtor filed his bankruptcy petition in May 1995. Therefore, the time for filing the claim had not expired when debtor filed bankruptcy. Debtor filed this action on July 23, 1996, within two years after the Chapter 11 petition was filed. Therefore, under section 108(a), the action was timely commenced. The bankruptcy court's dismissal of the claim for abuse of process cannot be upheld on the basis of expiration of the statute of limitations.

4. *Does debtor's complaint state a claim for abuse of process?*

██ Debtor argues that the dismissal of this claim cannot be upheld on the basis that it fails to state a claim for relief under Fed. R. Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6). In reviewing a dismissal for failure to state a claim, the Panel must accept all allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

██ To state a claim for abuse of process, a plaintiff must allege (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of

8. We do not address whether particular issues might be barred, because that question is not before the Panel in this appeal.

the proceeding. *Templeton Feed and Grain v. Ralston Purina Co.*, 69 Cal.2d 461, 466, 446 P.2d 152, 72 Cal.Rptr. 344 (1968). There is no claim for abuse of process if the process is used for its proper purpose, even if the person uses it for wrongful and malicious motives. *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th 857, 886, 6 Cal.Rptr.2d 151 (1992).

 The complaint alleges that defendants sought and obtained a writ of execution against debtor, filed an application and obtained an order of the court requiring debtor to appear at a judgment debtor's examination, caused the sheriff to levy on debtor's bank account, obtained an earnings withholding order seeking to garnish debtor's wages, sought to levy on the assets of debtor's business, and filed an application seeking the appointment of a receiver for debtor's business, all of which actions were in violation of California's one-action rule, Cal.Code Civ. Proc. § 726(a). It further alleges that defendants acted willfully and maliciously by intending to drive debtor into financial ruin, improperly collect debts and alienate the affections of debtor's children.

Defendant did not respond to debtor's argument. Attorney defendants do not dispute that the complaint alleges that they used process. They argue, however, that it does not allege that they used the process for an improper purpose. They claim that the purpose of the collection efforts was to collect the unpaid judgment, which is a legitimate purpose.

The complaint states a claim for abuse of process. It alleges that defendants misused the various execution processes in violation of section 726(a). If that fact is true, it establishes that the process was used wrongfully. *See Templeton Feed and Grain v. Ralston Purina Co.*, 69 Cal.2d at 467 n. 4, 72 Cal. Rptr. 344, 446 P.2d 152 (because the debt was secured by real property, the creditor had no right to use attachment process without first foreclosing on the deeds of trust);

*Pimentel v. Houk*, 101 Cal.App.2d 884, 886, 226 P.2d 739 (1951) (attachment of assets was proper in attempting to collect on a note, where not alleged that debt was otherwise secured).[9]

Debtor has also alleged an improper motive. Although it is true that a motive to cause mere vexation or harassment is insufficient, *Ion Equipment Corp. v. Nelson*, 110 Cal.App.3d 868, 876, 168 Cal.Rptr. 361 (1980), the allegations of this complaint go beyond that. Intending to drive debtor into financial ruin, to improperly collect debts and to alienate the affections of his children cannot be said to be purposes germane to use of process. Use of a process for such ends constitutes use of process "in achievement of a benefit totally extraneous to" the purpose for which the process is provided. *Id.* The dismissal of the claim for abuse of process cannot be upheld on the basis of failure to state a claim.

### 5. Does debtor's complaint state a claim for tortious violation of section 726(a)?

Finally, debtor argues that he has pleaded sufficient facts to support a claim for tortious violation of Cal.Code Civ. Pro. § 726(a). All defendants argue that there is no such tort.

The complaint alleges that section 726(a) imposes a duty on persons holding a debt secured by real property to proceed first against the security before seeking to enforce the debt against the debtor personally, and that defendant breached this duty when she brought the collection actions.

Debtor acknowledges that no California case has recognized such a tort. He argues, however, that the California Supreme Court has "strongly suggested" that violation of section 726(a) may give rise to a claim for monetary damages, relying on *Security Pacific National Bank v. Wozab*, 51 Cal.3d 991, 1001 n. 8, 800 P.2d 557, 275 Cal.Rptr. 201 (1990). Defendants argue that neither *Wozab* nor any other authority supports such a claim.

---

**9.** Attorney defendants argue that California Family Code § 290 allows the collection efforts they undertook on behalf of defendant to collect the debt arising from the dissolution judgment. The complaint alleges that the actions violated Cal.

Code of Civ. Pro. § 726(a). That issue was decided in BAP No. CC–96–1660. At the pleading stage in this case, the Panel must accept as true the allegations of the complaint.

In *Wozab,* a bank, which held a security interest in a depositor's real property, took a setoff against the depositor's bank account. When the depositor pointed out that the setoff violated the one-action rule of section 726(a), the bank reconveyed the deed of trust to the depositor and filed an action to collect the remainder of the debt. In considering the appropriate sanction for the bank's violation, the court said in a footnote that, were the bank to have taken the setoff and then promptly returned the funds to the depositor's account, "[a] sufficient remedy might be to hold the bank responsible for any compensatory damages suffered by the depositor." *Id.* at 1001 n. 8, 275 Cal.Rptr. 201, 800 P.2d 557. The dissent noted that the bank's setoff action subjected the bank to tort liability for conversion. *Id.* at 1011, 275 Cal.Rptr. 201, 800 P.2d 557.

There is nothing in the court's opinion that even hints at the possibility that the California court would recognize an independent tort for violation of section 726(a). Severe sanctions already exist for such a violation. In addition, as the court noted, there is potential liability for conversion when the creditor wrongfully exercises the right of ownership over the debtor's property. It is extremely unlikely that the court would add an additional weapon of an independent tort to the debtor's already powerful sanctions arsenal.

■■■■■ Debtor argues that the federal courts must "apply the substantive law that it conscientiously believes would have been applied in the state court system ...." 19 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4507 at 126 (1996). That does not mean, however, that federal courts are free to adopt innovative theories for the state, particularly in the absence of any state authority that would lend support to the new theory. *See Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 462 (5th Cir.1996). Because it does not appear that California would recognize an independent tort for violation of section 726(a), the bankruptcy court's dismissal of that claim will be upheld for failure to state a claim.

## CONCLUSION

The bankruptcy court's dismissal of the claim for abuse of process is REVERSED AND REMANDED. The dismissal of the claim for tortious violation of section 726(a) is AFFIRMED.

JONES, Bankruptcy Judge, concurring in part; dissenting in part.

I respectfully dissent. I would affirm the bankruptcy court. The Debtor's claim against Jody DiSalvo is barred by the doctrine of claim preclusion. I would also affirm the bankruptcy court's dismissal of the abuse of process claim against the attorneys on the basis that it fails to state a claim for which relief can be granted. I concur in affirming the bankruptcy court's dismissal of the claim for "tortious violation of § 726(a)."

As to the claim against Jody DiSalvo, the majority bases its reversal on a distinction between the debtor and the debtor in possession that other courts have correctly deemed "artificial and fictitious." *In re Allen,* 135 B.R. 856, 868 (Bankr.N.D.Iowa 1992) (following *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984)). The majority concludes that because the "debtor appeared in the earlier action [the dischargeability complaint] in his individual capacity, not in his capacity as debtor in possession representing the interests of the estate," the debtor and the debtor in possession are not the same parties and therefore claim preclusion does not apply. This conclusion appears to be based on the captions of the two complaints. The majority's analysis elevates form over substance, and revives the "separate entity" theory rejected by the Supreme Court.

Contrary to the majority's conclusion here, the Supreme Court in *Bildisco* concluded that the debtor in possession is not a separate entity from the debtor. The Court noted:

Obviously if [the DIP] were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same "entity"

which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing.

*Bildisco*, 465 U.S. at 528, 104 S.Ct. 1188. Subsequent case law has not limited *Bildisco* to the context of executory contracts. In the Ninth Circuit case *In re Teerlink Ranch, Ltd.*, 886 F.2d 1233 (9th Cir.1989), the debtor TRL argued that when as debtor in possession it paid a prepetition debt, it was paying a debt on behalf of another entity and thus became a judicial lien creditor under § 544(a). The Ninth Circuit rejected this argument. Following *Bildisco*, the court sensibly concluded that despite the debtor's additional title as debtor in possession, TRL was "still the same old debtor satisfying the same old debt." *Id.* at 1235–36. Consistent with other courts dealing with this issue,[10] the Ninth Circuit was persuaded by substance rather than form.

The majority distinguishes these decisions because of a general rule of civil practice that when a defendant is sued in a personal capacity, any claims against the plaintiff that the defendant has in a representative capacity are not compulsory counter-claims. In the ordinary non-bankruptcy, trustee-fiduciary context this general rule makes sense. Here, however, the distinction simply deals with Mr. DiSalvo's dual status as debtor and as debtor in possession. The Supreme Court in *Bildisco* tells us that the debtor and debtor in possession are the same entity. In this context, the distinction between the debtor and the debtor in possession is substantively meaningless.

Following the approach of *Bildisco* and *Teerlink*, in this case the same entity was before the court in the first action as in the second. Both actions took place in the bankruptcy court post-petition. We have the same debtor, with the same facts, with the same claim that should have been brought in the first proceeding. Therefore, the debtor's claim should be barred by claim preclusion.

Further, the court in the first action not only found the debt to be dischargeable, but also ordered the claim extinguished. The majority concedes that "[t]he court's determination that the debt was extinguished, rather than simply discharged, benefitted the debtor individually and the estate." The fact that the extinguishment of the $100,000 claim benefitted the estate demonstrates that the first action "was in fact tried and decided as one that involved the representative capacity of the party." Majority Op. at 768 (citing *Federal Practice and Procedure* § 4454 at 459). While we have reversed the sanction of extinguishment of the debt, the issue of debt extinguishment clearly involved the interest of the estate. An award of attorney's fees would also have benefitted the estate. Thus, not only is the majority's "separate entity" theory itself unwarranted by prior decisions, the theory should not apply to the facts of this case. Interests of the estate were in fact litigated and decided in the first action.

The majority suggests that the test for res judicata purposes is not whether the same entity is before the court, but whether the same interests are represented, warning that the court must look "at the substance, not the form, of the interests represented." Majority Op. at 768 (citing *Moore's Federal Practice* § 131.40[2][a] at 131–131). Although the majority provides distinctions as to form, in my view the interests represented in the two actions are substantively identical. Therefore, I would affirm the bankruptcy court's ruling dismissing the claims against

10. *See, e.g., U.S. through ASCS v. Gerth*, 991 F.2d 1428, 1436 (8th Cir.1993) ("If the debtor and the debtor-in-possession are the same entity for purposes of an executory contract under § 365, we see no logical reason to consider them different entities when examining an executory contract for purposes of setoff ....."); *In re Allen*, 135 B.R. 856, 868 (Bankr.N.D.Iowa 1992) ("This Court believes that the language of *Bildisco* is unambiguous and intended to put a stop to the rather artificial and fictitious distinctions between the debtor-in-possession and the debtor."); *In re Ontario Locomotive & Indus. Ry. Supplies, Inc.*, 126 B.R. 146, 147 (Bankr.W.D.N.Y.1991) (stating that "the [*Bildisco* ] Court would appear to have laid to rest the 'separate entity' doctrine for all time" and noting that even the dissent in *Bildisco* agreed with the rejection of the separate entity theory); *In re Mohawk Indus., Inc.*, 82 B.R. 174, 177 (Bankr.Mass.1987) ("The Supreme Court has rejected the new entity theory.").

defendant Jody DiSalvo on the grounds of claim preclusion.

As for the abuse of process claim against Jody DiSalvo's attorneys, I would also affirm the bankruptcy court's dismissal for failure to state a claim for which relief can be granted. The majority concludes that a violation of CAL. CIV. PROC. CODE § 726(a)[11], if proven, is a wrongful use of process. I respectfully disagree.

The majority has cited no decision holding that § 726(a) may give rise to an abuse of process claim. Case law is clear that § 726(a) is an election of remedies statute that provides its own sanction. The California Supreme Court has explained:

> If the debtor does not raise the section as an affirmative defense, he may still invoke it as a sanction against the creditor on the basis that the latter by not foreclosing on the security in the action brought to enforce the debt, has made an election of remedies and waived the security.

*Walker v. Community Bank,* 10 Cal.3d 729, 111 Cal.Rptr. 897, 900, 518 P.2d 329 (1974). *Accord In re Madigan,* 122 B.R. 103, 105–06 (9th Cir. BAP 1991) (explaining § 726(a) in terms of "the election of remedies doctrine" and stating that the purpose of the statute "is to prevent the creditor from enforcing its rights by more than one remedy"); *Prestige Ltd. Partnership–Concord v. East Bay Car Wash Partners (In re Prestige Ltd. Partnership–Concord),* 205 B.R. 427, 434 (Bankr. N.D.Cal.1997) (citing *Walker* ); *see also In re Sunnymead Shopping Ctr. Co.,* 178 B.R. 809, 815 (9th Cir. BAP 1995) (stating that a creditor who first obtains a monetary judgment without pursuing foreclosure on the security "will be deemed to have forfeited its right to further pursue its security interest"). If the creditor elects to proceed against the debt, it loses its security interest and also risks losing the underlying debt. *Security Pac. Nat'l Bank v. Wozab,* 51 Cal.3d 991, 275 Cal.Rptr. 201, 208 & 210, 800 P.2d 557 (1990). Under § 726(a), the creditor elects a remedy and takes the consequences.

Here, the defendant has undergone the sanction of losing its security interest. In-

curring this sanction and proceeding on the debt does not give rise to an abuse of process claim. In its analysis of the claim of "tortious violation of § 726(a)" the majority correctly recognizes that "[s]evere sanctions already exist for such a violation." The same analysis is proper here. It would be improper to allow an abuse of process claim when a creditor elects to forgo its security and undergoes the sanctions inherent in the statute. In my view the creditor's election of this remedy cannot be considered a "use of the process not proper in the regular conduct of the proceeding." *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal.3d 1157, 232 Cal.Rptr. 567, 574, 728 P.2d 1202 (1986) (quoting *Templeton Feed & Grain v. Ralston Purina Co.,* 69 Cal.2d 461, 72 Cal.Rptr. 344, 347, 446 P.2d 152 (1968)).

The majority cites two authorities to support its conclusion that a violation of § 726(a) establishes a wrongful use of process: *Pimentel v. Houk,* 101 Cal.App.2d 884, 226 P.2d 739 (1951), and a footnote from *Templeton Feed,* 72 Cal.Rptr. at 347 n. 4, 446 P.2d 152. Neither case supports the majority's contention. *Pimentel* does not deal with § 726(a), or for that matter, any other statute. *Pimentel* simply holds that the plaintiff-appellant did not have an abuse of process claim where he made no allegation of any kind that the defendant-creditor's writ of attachment was improperly issued. *Pimentel,* 226 P.2d at 740. Few would disagree with this benign holding.

The facts of *Templeton Feed* also do not involve § 726(a). In that case the creditor, through a claim and delivery action, seized 35,000 turkeys from a ranch when it apparently knew that it held no security interest in the turkeys. The debtor brought an abuse of process action. The court's only mention of § 726(a) is its response to the creditor's defense that, hypothetically, it could have properly achieved the same result in an attachment proceeding. The court stated that a creditor "would have no right to use the attachment process without first foreclosing on the deeds of trust." 72 Cal.Rptr. at 347 n. 4, 446 P.2d 152 (citing CAL. CIV. PROC. CODE

**11.** Hereafter referred to as § 726(a).

§§ 537 [repealed], 726). The court's rejection of the creditor's hypothetical defense does not mean that § 726(a) is the basis for an abuse of process claim.[12] *Templeton Feed* must be read in light of the California Supreme Court's interpretation of § 726(a) in *Walker v. Community Bank* and its progeny. Those cases are clear that the creditor that proceeds on the debt is electing a remedy that submits it to the severe sanction of a waiver of its security interest and if appropriate, possible extinguishment of the debt. The creditor suffered those sanctions in this case. No further claim arises from § 726(a).

In my view, an election of remedies under § 726(a) will not give rise to an abuse of process claim. It would indeed be ironic if the statute designed to limit the collection process to one action, and providing its own sanctions for a violation, became the breeding ground for a second generation of litigation. I would affirm the bankruptcy court's dismissal of the abuse of process claim against the attorneys on the ground of failure to state a claim for which relief can be granted.

---

**12.** *Templeton Feed* in footnote 4 cites CAL. CIV. PROC. CODE § 537 (the repealed section regarding attachment) and § 726. The California Code's current wrongful attachment chapter specifically does not limit common law theories of recovery. CAL. CIV. PROC. CODE § 490.060 (West 1979 & Supp.1998). However, the chapter regarding foreclosure of mortgages which includes § 726(a) has no similar provision allowing for common law theories of recovery. *See* CAL CIV PROC. CODE §§ 725a–730.5 (West 1979 & Supp. 1998).